BISHOP
*vs*
LOVAN.

---

EJECTMENT.

Case 25.

October 4.

Case stated.

# Bishop *vs* Lovan.

APPEAL FROM THE HOPKINS CIRCUIT.

*Sales of land for taxes.   Agents.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

THIS is an action of ejectment, brought by Bishop against Lovan.  Bishop claims title under a deed made to him by Samuel Woodson, an agent appointed by the Second Auditor, under the statute of 1840, (3 *Stat. Law,*

229,) to inquire into and settle with the representatives of persons dying without heirs or distributees, to make inquiry and report, of the escheated lands in his county, and sale of the lands forfeited to the Commonwealth for the non-payment of taxes. The Circuit Court, upon the evidence offered by the plaintiff, instructed the jury to find as in case of a non-suit—and the propriety of this instruction is questioned here.

It appears that prior to 1824, the 500 acres of land in contest, lying on Pond river, in Hopkins county, was listed for taxation in the name of Henry C. Gist; that the taxes were not paid, and the land stricken off to the State for their non-payment; that the land in contest was a part of a 2000 acre tract granted to Nathaniel Gist, by the Commonwealth of Virginia, in 1787; that Nathaniel Gist died about forty years ago, leaving eight heirs, among whom was Henry C. Gist, in whose name the land was listed for taxation; that he died in 1833, without issue, and that the defendant was in possession at the service of the declaration in ejectment. It further appeared in proof that the Second Auditor, under the act of 1840, above referred to, had appointed Samuel Woodson agent for Hopkins county; that he inclosed him a list of the forfeited lands in the county, and gave him authority "to proceed and sell the same, according to the several provisions of said act"—"before selling, advertising the same at the Court house door, six or eight weeks, letting a Court intervene, and fixing the sale on some Circuit or County Court day;" that Samuel Woodson, as agent, did sell said land, and the plaintiff being the highest bidder, purchased the same at twenty dollars seventy-three cents, the amount of the taxes and charges due thereon, and Woodson executed to him a deed. There was no evidence adduced that any offer was made to sell to the former owner, his heirs or assigns, nor that any offer was made to any one in possession, to quiet his title by paying the taxes and charges due; nor does it appear that any inquiry was made or other effort to find out the former owner, his heirs or assigns, or to ascertain whether there was any person in possession of the land, nor that any tender or offer was made to either, to pay the taxes

BISHOP
vs
LOVAN.

and charges, before the sale was made, nor was there any opportunity afforded them to exercise the pre-emption privilege, nor inquiry or effort made to afford them the opportunity to do so. Under these circumstances, the question arises whether the sale to Bishop was authorized by the statute or can be sustained.

The statute of 1822 repealed all laws authorizing the sale of residents' lands for taxes—its object and policy.

By the act of 1822, (2 *Stat. Laws*, 1377,) the Legislature repealed all laws which authorized the *sale* of the lands of resident citizens for the taxes, and substituted in its stead, a forfeiture thereof to the Commonwealth. Their policy, in part no doubt, was to prevent the enormous sacrifices which took place in these sales, and the irreparable injury which was often inflicted upon good citizens and honest occupants, who had, in most instances, innocently acquired the property, and was ignorant that any taxes were due and unpaid upon it. While the title remained in the Commonwealth, the forfeiture might be remitted and the title surrendered upon equitable terms: but if a sale should be made, the title might, as it often had done under former laws, fall into the hands of some heartless speculator, for a few dollars, who would oust the occupant or innocent owner from his home and possession without remedy. This policy of forfeiture, rather than sale, was persevered in, until the act was passed under which the sale in this case was made. Nor do we think there is any thing in that act indicating an intention entirely to abandon the policy. While, therefore, they deemed it proper to take some steps to collect the taxes due, it may be clearly deduced from the provisions of the act, that they intended to guard against the evils, sacrifices and hardships that were engendered by the sales made under former laws. Looking to the evils that occurred under the former laws, and the policy of the Legislature to guard against them, it may be well doubted whether a sale to the highest bidder was ever contemplated or intended to be allowed, except in cases where the former owner, his heirs or assigns, as well as the occupant of the land, had been found and distinctly notified of the amount of taxes due, and of his right to purchase or redeem, and had *declined* to do so. In that case, he would have no right to complain if the land was

sold to another. And it may be well questioned whether a sale can be to another in any other state of case, under the authority of the act. The fifth section provides that the "Auditor may authorize the agent to *re-sell* the *land* to the *former owner* or *his heirs or assigns*, for the *taxes* due thereon," &c. And the sixth section provides, "that when no former owners or their heirs or assigns shall be found *willing to redeem*, and there shall be any one in possession of such estate or any part thereof, under an adverse title, such person *shall have* the *right to quiet his title*, by paying the amount of taxes," &c. and the agent shall convey him the title of the Commonwealth. The seventh section provides, "that *when there shall be no former owner or his heirs or assigns, willing to redeem*, and *no one* in the *adverse possession willing* to purchase, the said Auditor may direct the agent or attorney to sell the land in one or more tracts, to suit purchasers, for as much money as it will bring, either at public or private sale." The eighth section provides, "that when there shall be more than one former owner, or more than one heir or devisee or assignee of the former owner or owners, or more than one person holding part of such land in adverse possession, each of such persons shall have a *right to redeem or purchase*, as the case may be, their parcel or undivided part of such land, at such rate as such person and the agent can agree on."

We can hardly conceive how the agent or Auditor can know whether the former owner, his heirs or assigns, or the possessor is *willing* or *unwilling* to redeem or purchase until he is seen and apprized of the amount of taxes due, and of his right to redeem or purchase; or how they can determine that they have *declined* to do either without some personal communication with them. And the law authorizes a sale to a third person only in the event of their, and each of them, *declining* to redeem or purchase.

The law has provided no way by which their willingness or unwillingness may be ascertained, nor any public notification by which, and their subsequent failure to come forward and redeem or purchase, their unwillingness and refusal may be implied; and it is remarkable

The agents of the Auditor, appointed for that purpose, are not authorized to sell the land of residents for the taxes, &c. due, until they make diligent *search* for the former owners, their heirs or assigns, or those in possession of the land, and if found, to offer to each, in the order prescribed in the act, the privilege to redeem or repurchase.—

that there is no mode prescribed in the statute by which notice is to be given of the sale. But the agent is authorized to sell at public or *private* sale. This gives strength to the conclusion that it was intended by the act, that the agents appointed in the several counties should *search* and *find* out the owners or their heirs or assigns, and if there were none that they should then *ferret* out the occupants on the land, and *offer* to each, in the order prescribed by the act, the privilege to redeem or repurchase, and if, upon enquiry, there were found to be no owner or occupant, or heirs or assigns of the former, then and then only were they authorized to make the best bargain they could for the State by *private* or public sale. To allow them to sell at private sale, *without notice*, when there was an owner, his heirs or assigns, or an occupant on the land, would be to enable him to do more manifest injustice and wrong to them than was inflicted under former laws, which never could have entered into the contemplation of the Legislature.

But if the agent's right to sell to a third person is not dependent upon the prior positive refusal of the former owner, his heirs or assigns, and also of the occupant, upon due and proper notice, it was at least certainly the duty of the agent to have made diligent search and inquiry for them, and each of them, before he sold; and upon such diligent search and inquiry, had failed to find either; and only upon such facts being made to appear, could his sale be sustained, if ever it could be sustained upon such proof, which we are not now prepared to concede.

The agent is a private individual, and is not a public officer. He executes no bond for the faithful discharge of his duties, or the indemnification of those who may be injured by his failure to do his duty, nor is he required to take an oath, nor does he act under the sanction of an official oath; no presumption will be indulged, therefore, in favor of the regularity of his acts, but the person claiming title under his sale must show that he has done every thing which the law requires to be done to authorize the sale; and as that was not shown in this case, the instruc-

—And as he is not a public officer, and takes no oath of office, in a suit by a purchaser against the occupant, the fact that he has pursued the requisitions of the law must be made to appear.

tion of the Court was proper and the judgment is affirmed with costs.

*Harlan & Craddock* for appellant: *Owsley & Goodloe* for appellees.